UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEE GROSSMAN LEIBSON,

    Plaintiff,

v.                                            Case No.: 8:17-cv-1947-T-33TGW

THE TJX COMPANIES, INC., and
STANLEY ACCESS TECHNOLOGIES,

    Defendants.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant The TJX Companies' Motion for Summary Judgment (Doc. # 32), filed on April 13, 2018. Plaintiff Lee Grossman Leibson responded on May 22, 2018. (Doc. # 39). The TJX Companies replied on June 11, 2018. (Doc. # 44). For the reasons that follow, the Motion is granted.

**I.**   **Background**

Leibson is a ninety-one year old woman who fell while exiting a Marshalls store in St. Petersburg, Florida, on June 3, 2016. (Doc. # 2 at ¶¶ 7, 8, 10; Doc. # 21 at 2). Leibson was struck by an automatic sliding door that was manufactured and installed by Defendant Stanley Access Technologies at the Marshalls, which is owned by The TJX Companies. (Doc. # 2 at ¶¶ 9, 10). As a result, Leibson fell and sustained injuries.

1

(Id. at ¶ 10). Leibson alleges the accident, which was captured by the store's security camera, occurred because The TJX Companies "negligently maintained the automatic slide door on the Premises." (Id. at ¶ 14). She insists the "negligent condition was known to [The TJX Companies] or had existed for a sufficient length of time so that [The TJX Companies] should have known of its presence." (Id. at ¶ 15).

The TJX Companies disputes that it negligently maintained the automatic sliding door or that it should have known about any dangerous condition. Based on the store's sales and visitor numbers, the store's district manager, David Kelly, estimated that the automatic sliding door has opened and closed over three million times in the last five years without any accidents. (Kelly Aff. Doc. # 32-1 at ¶¶ 2, 6, 11). Mr. Kelly further averred that he is not aware of "any other incident involving the sliding glass doors that has ever occurred at the store." (Id. at ¶ 13). The TJX Companies' expert, Dr. Dirk Smith, noted that fifty-nine other patrons exited through the automatic sliding doors at Marshalls the day of Leibson's accident. (Smith Dep. Doc. # 43 at 109:6-14, 110:6-22). None of those patrons had difficulty using the door and Dr. Smith testified that the door and its sensors appeared to be functioning correctly on

the security video he reviewed. (Id. at 120:9-18; Doc. # 40 at 8).

The TJX Companies did not have a regular maintenance agreement with Stanley Access Technologies. (Smith Dep. Doc. # 43 at 101:10-22). Instead, the TJX Companies would call in a technician from Stanley Access Technologies when problems arose with the door. A Stanley Access Technologies technician visited the store at least three times in 2016 to address various problems with various doors — before Leibson's accident on January 4, 2016, and May 11, 2016, and after Leibson's accident on July 27, 2016. (Doc. # 39 at 25-28). The maintenance check performed on July 27, 2016 – about six weeks after the accident — revealed that there was "a lot of dirt" on some unidentified sensors. (Id. at 28). Additionally, Marshalls employees were supposed to perform daily checks on the automatic door using a maintenance checklist provided by Stanley Access Technologies. (Kadiyala Dep. Doc. # 34 at 75:14-25, 78:8-79:1).

It is unclear exactly why the automatic sliding door closed on Leibson. Leibson's engineering expert, Dr. Srinivas Kadiyala, testified that there was a malfunction in the door caused by either a failed sensor or control system within the overhead threshold sensor system. (Id. at 83:18-84:3, 135:8-

15). He agreed the sensor or control panel would have been functioning when first installed, but likely failed at some point afterwards. (Id. at 134:9-14). Although he was uncertain whether Leibson's accident was caused by a failed sensor or control panel, Dr. Kadiyala testified that The TJX Companies would not have been able to identify the problem using the daily checklist. (Id. at 84:24-85:7, 120:9-25, 134:20-135:2, 135:13-15).

He admitted that the automatic door is not "a dangerous condition" "for the general public." (Id. at 120:5-7). Nevertheless, Dr. Kadiyala opined that he was able to identify the existence of a hazard — the automatic sliding door closing on a patron — for a "very specific type of population going in a very specific manner." (Id. at 116:18-24, 119:17-25, 120:23-25, 134:20-135:7). Specifically, "the foreseeable condition of use in this case is slow moving members of the public will walk at an angle predominantly with respect to the door opening." (Id. at 135:3-6). While the door would open for slow moving patrons approaching the door at an odd angle, it could close on them as they walked through. Dr. Kadiyala was able to recreate the same result over a year after the accident — when he approached the door very slowly at an angle and put only his foot in the threshold, the door

4

began to close on him. (Id. at 62:21-24, 70:19-24, 72:1-22, 73:1-17, 135:10-12).

Dr. Smith, The TJX Companies' expert, agreed with Dr. Kadiyala to the extent he testified "that it takes a very, very specific set of circumstances for this [type of accident] to happen." (Smith Dep. Doc. # 43 at 110:23-24). But Dr. Smith disagreed the door was malfunctioning. Given the over three million entrances and exits through the door with no similar accidents, he concluded that "the door [is] functioning as it should." (Id. at 110:6-22). When asked whether "Leibson used the sliding doors in a foreseeable manner," Dr. Smith responded:

> Based on what I saw of the video, of the whole time prior to that, no one came in or out in that manner. Now, again, I'm not a human factors expert in that situation for — for ingress and egress of a building, but nobody else in the whole video used the doors in that way, even when they came in, when her husband exited, well, he excited a little differently, but everyone else who came in, or came out went straight in, or straight out.

(Id. at 99:12-23). Also during the deposition, Dr. Smith commented on the manner in which Leibson used the door.

> Q: . . . [T]he slowness of Ms. Leibson, with respect to the speed that she exited the store, and at the time right before the doors closed, when she was standing in front of [it], and she fell, is that foreseeable or not with regard to the customer?

> A: I will say it this way. The way she moved was not normal. She would move, she would stop, she would move a little bit, and stop. That's not what I — that's not normal movement, to move in and out of the building.

(Id. at 100:9-21).

Leibson initiated this action in state court against The TJX Companies, Inc. asserting claims for "negligent maintenance" and "negligence/premises liability." (Doc. # 1-1 at 4-10). Subsequently, Leibson filed an Amended Complaint asserting a claim for negligence against The TJX Companies and adding a negligence claim against Stanley Access Technologies. (Doc. # 2). Stanley Access Technologies removed the case to this Court on August 16, 2017, based on diversity jurisdiction. (Doc. # 1). The case proceeded through discovery. The parties mediated on February 1, 2018, but reached an impasse. (Doc. # 26).

On April 13, 2018, The TJX Companies moved for summary judgment. (Doc. # 32). Leibson responded to the Motion on May 22, 2018, (Doc. # 39), and The TJX Companies has replied. (Doc. # 44). The Motion is ripe for review.

## II. **Legal Standard**

Summary Judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue

for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

### III. **Analysis**

"In order to sustain a negligence claim under Florida law, a plaintiff must prove by a preponderance of the evidence that: (1) the defendant had a duty to protect the plaintiff; (2) the defendant breached that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injuries and resulting damages." Thorpe v. BJ's Restaurants, Inc., 287

F. Supp. 3d 1332, 1336 (M.D. Fla. 2017)(citation and internal quotation marks omitted). "A landowner owes two duties [of care] to a business invitee: (1) to use reasonable care in maintaining its premises in a reasonably safe condition; and (2) to give the invitee warning of concealed perils that are or should be known to the landowner and that are unknown to the invitee and cannot be discovered through the exercise of due care." Id. (quoting Potash v. Orange Cty. Lake Country Club, Inc., No. 6:03-cv-1652-Orl-18KRS, 2005 WL 1073926, at *2 (M.D. Fla. Apr. 29, 2005)).

"The two duties owed by a landowner to a business invitee are 'distinct.'" Thorpe, 287 F. Supp. 3d at 1336 (citation omitted). So, "[w]hile the fact that a danger is obvious discharges a landowner's duty to warn, it does not discharge the landowner's duty to maintain his premises." De Cruz-Haymer v. Festival Food Mkt., Inc., 117 So.3d 885, 888 (Fla. 4th DCA 2013). "It is still fundamental, of course, that the mere occurrence of an accident does not give rise to an inference of negligence, and is not sufficient for a finding of negligence on the part of anyone." Cassel v. Price, 396 So. 2d 258, 264 (Fla. 1st DCA 1981).

The Amended Complaint alleges The TJX Companies is liable for negligence because The TJX Companies violated its

9

duty to "use due care to maintain the Premises in a reasonably safe condition." (Doc. # 2 at ¶ 12). Thus, to prevail on her claim, Leibson "must be able to show that [The TJX Companies] failed to use reasonable care in maintaining its premises and had actual or constructive notice of the alleged dangerous condition." Thorpe, 287 F. Supp. 3d at 1336; see also Bryant v. United States, No. 3:08-cv-979-J-34TEM, 2010 WL 11507557, at *5 (M.D. Fla. Oct. 26, 2010)("This duty [to maintain its premises in a reasonably safe condition] requires Defendant to exercise ordinary care.").

In support of her claim, Leibson highlights that a maintenance log for the door entered on July 27, 2016 — over a month after the accident — stated that some sensors had "a lot of dirt" on them. (Doc. # 39 at 3-4, 28). Furthermore, Dr. Kadiyala testified that the automatic sliding door presented an identifiable hazard for a "very specific type of population going in a very specific manner" — the elderly or disabled who might approach the door slowly at an angle, rather than walking straight through the door briskly. (Kadiyala Dep. Doc. # 34 at 119:23-25, 121:10-15, 135:3-7). He acknowledged that the problem — the door closing on Leibson — was caused by a failed sensor or control system but insisted that Leibson's use of the door was "a foreseeable condition

of use." (Id. at 134:20-135:15). Leibson emphasizes that Dr. Kadiyala was able to recreate this result — having the automatic door close on him as he walked slowly through the door at an angle — over a year after the accident. (Id. at 135:8-12).

The TJX Companies insists it did not have actual or constructive notice of the alleged dangerous condition. (Doc. # 32 at 3). It emphasizes that no previous accident had occurred in which a patron was hit by the automatic sliding door, even though it estimates the door had opened and closed over three million times in the last five years. (Id.; Kelly Aff. Doc. # 32-1 at ¶¶ 2, 6, 11).

In another case involving an accident with an automatic glass door, the District Court of Appeal affirmed summary judgment for the premises owner, writing: "We do not think that the landowner could have reasonably anticipated the confluence of events which allowed the electric eye and motion detector at the store's entrance to be defeated and the accident to occur." Laks v. X-Tra Super Food Centers, Inc., 654 So.2d 578, 578 (Fla. 3d DCA 1995). "The law does not impose liability for freak injuries that were utterly unpredictable in light of common human experience." Id. (quoting McCain v. Fla. Power Corp., 593 So.2d 500, 503 (Fla.

11

1992)). Relying on Laks, The TJX Companies argues Leibson's accident was "freakish and improbable" as "there is no evidence to indicate that the store had any knowledge that there was an issue with the sliding glass door in that millions of customers have been in and out of those doors without a similar type of accident ever occurring." (Doc. # 32 at 3).

And The TJX Companies argues that the July 27, 2016 maintenance report does not support that it negligently maintained the door and thereby caused Leibson's accident. (Doc. # 44 at 2-3). As The TJX Companies points out, the maintenance report is an unsworn statement that should not be considered on summary judgment. See Wen Liu v. Univ. of Miami Sch. of Med., 693 F. App'x 793, 795 (11th Cir. 2017)("[U]nsworn statements may not be considered in evaluating a summary judgment motion.").

Furthermore, even if it were considered, The TJX Companies emphasizes that the maintenance report does not mention which sensors had dirt on them, so there is no evidence the dirt influenced whatever sensor was responsible for the accident. And fifty-nine patrons exited the door that day without any problems, implying the dirty sensors — whichever sensors they may have been — did not impact the

door's functionality. (Smith Dep. Doc. # 43 at 120:9-18). Finally, The TJX Companies notes that the "dirty" sensor theory is undermined by Leibson's own expert. (Doc. # 44 at 3). Dr. Kadiyala testified he was able to replicate the accident when he visited the Marshalls store over a year later, without any reference to dirty sensors. (Kadiyala Dep. Doc. # 34 at 62:21-24, 70:19-24, 72:1-22, 73:1-17, 135:10-12). According to The TJX Companies, "if [a dirty sensor] was the cause as [Leibson is] trying to allege then [Dr. Kadiyala] should not have been able to recreate this incident after the sensor had been cleaned." (Doc. # 44 at 3).

The Court agrees with The TJX Companies that summary judgment is appropriate. While Leibson's accident is unfortunate, "a landowner is not an insurer of the safety of its invitees." K-Mart Corp. v. Dwyer, 656 So.2d 1340, 1342 (Fla. 5th DCA 1995). The TJX Companies "is held to a reasonableness standard, not a standard which anticipates every possible misuse of its means of ingress and egress." Id.; see also Cassel, 396 So. 2d at 264 ("A person is not required to take measures to avoid a danger which the circumstances as known to him do not suggest as likely to happen.").

Taking the facts in the light most favorable to Leibson, there is insufficient evidence to raise an issue of material fact concerning whether The TJX Companies knew or should have known about the supposed flaw in the door's sensor system. It is undisputed that no similar accident occurred before Leibson's accident, despite millions of uses of the door. (Kelly Aff. Doc. # 32-1 at ¶¶ 2, 6, 11, 13). While Dr. Kadiyala opined that a "foreseeable condition of use" for the door was that elderly patrons would approach the door very slowly at an angle, he also opined that the accident was the result of a failed sensor or incorrectly tuned control system. (Kadiyala Dep. Doc. # 34 at 83:18-84:3, 135:3-7, 135:13-15). He acknowledged that the sensor and control system would have been working correctly at the time of the door's installation. (Id. at 134:9-14).

Furthermore, he testified the daily maintenance checklist Stanley Access Technologies provided to The TJX Companies would not have revealed the hazard created by the failed sensor or control system. (Id. at 84:24-85:7, 120:9-25). Therefore, The TJX Companies "would not have knowledge of a failed sensor" when no other incidents caused by that problem had occurred. (Id. at 134:20-135:2). Based on this record, The TJX Companies had neither actual nor constructive

14

knowledge of the risk that the door might close on Leibson. See Thorpe, 287 F. Supp. 3d at 1338 ("[T]he undisputed material facts do not plausibly support Plaintiffs' allegations that BJ's failed to use ordinary care in keeping its premises in a reasonably safe condition. There is a glaring lack of record evidence that BJ's had actual or constructive notice of any dangerous condition pertaining to the Men's Restroom that it was obligated to address prior to the Incident.").

Nor is there evidence to raise a genuine issue of material fact about whether The TJX Companies negligently maintained the door. The lack of a regular maintenance agreement with Stanley Access Technologies does not raise the inference that The TJX Companies failed to maintain the door. There is evidence that The TJX Companies called Stanley Access Technologies out to service the door when malfunctions arose, including on January 4, 2016, May 11, 2016, and July 27, 2016. (Doc. # 39 at 25-28). While the July 27 maintenance report — an unsworn statement — stated there was "a lot of dirt" on some sensors, no sensors were identified and the sensors were viewed six weeks after Leibson's accident. (Id.). So, that maintenance report does not raise the inference that dirt on

an unspecified sensor was the cause of Leibson's accident or the result of poor maintenance by The TJX Companies.

Without more, no genuine issue of material fact exists as to whether The TJX Companies breached its duty to maintain its premises in a reasonably safe condition. Therefore, the Court grants summary judgment in The TJX Companies' favor.[1]

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendant The TJX Companies' Motion for Summary Judgment (Doc. # 32) is **GRANTED**.

(2) The case will proceed to trial on Leibson's claim against Defendant Stanley Access Technologies.

---

[1] Federal Rule of Civil Procedure 54(b) states: "When an action presents more than one claim for relief - whether as a claim, counterclaim, crossclaim, or third-party claim — or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Because this Order does not adjudicate all the claims or the rights and liabilities of all the parties, the Court will not enter final judgment in favor of The TJX Companies on the claim against it until the end of the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 11th day of July, 2018.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE