UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEE GROSSMAN LEIBSON,

    Plaintiff,

v.                           Case No.: 8:17-cv-1947-T-33TGW

THE TJX COMPANIES, INC., and
STANLEY ACCESS TECHNOLOGIES,

    Defendants.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant Stanley Access Technologies' Amended Omnibus Motion in Limine (Doc. # 55), filed on July 20, 2018. Plaintiff Lee Grossman Leibson responded to the Motion on August 7, 2018. (Doc. # 62). For the reasons that follow, the Court grants the Motion in part and denies it in part, as set forth below.

**I.    Background**

Leibson is an elderly woman who fell while exiting a Marshalls store in St. Petersburg, Florida, on June 3, 2016. (Doc. # 2 at ¶¶ 7, 8, 10). Leibson was allegedly struck by an automatic sliding door that was manufactured and installed by Stanley Access at the Marshalls, causing her to fall and sustain injuries. (Id. at ¶¶ 9, 10).

1

Leibson then initiated this action in state court against Defendant The TJX Companies, Inc., the owner of the Marshalls store, for negligence. (Doc. # 1-1 at 4-10). Subsequently, Leibson filed an Amended Complaint adding a negligence claim against Stanley Access based on Stanley Access's alleged violations of numerous duties. (Doc. # 2).

Stanley Access removed the case to this Court on August 16, 2017, based on diversity jurisdiction. (Doc. # 1). The case proceeded through discovery. Then, Stanley Access moved for partial summary judgment on April 13, 2018. (Doc. # 33). The Court granted that motion on June 27, 2018. (Doc. # 45). The TJX Companies also moved for summary judgment (Doc. # 32), and the Court granted that motion on July 11, 2018 (Doc. # 46). As such, Leibson's case survives only as to the negligence claim against Stanley Access based on its duty to provide instructions on installation and maintenance of the door.

Stanley Access filed its Amended Omnibus Motion in Limine (Doc. # 55) on July 20, 2018. Leibson has responded (Doc. # 62), and the Motion is ripe for review.

II. **Legal Standard**

"A motion in limine presents a pretrial issue of admissibility of evidence that is likely to arise at trial,

2

and as such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial." In re Seroquel Prods. Liab. Litig., Nos. 6:06-md-1769-Orl-22DAB, 6:07-cv-15733-Orl-22DAB, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009). "The real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably effect the fairness of the trial." Id. (internal quotation omitted). "A court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds." Id. (internal quotation omitted).

"A motion in limine is not the proper vehicle to resolve substantive issues, to test issues of law, or to address or narrow the issues to be tried." LSQ Funding Grp. v. EDS Field Servs., 879 F. Supp. 2d 1320, 1337 (M.D. Fla. 2012)(citing Royal Indem. Co. v. Liberty Mut. Fire Ins. Co., No. 07-80172-CIV, 2008 WL 2323900, at *1 (S.D. Fla. June 5, 2008)). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial." In re Seroquel, 2009 WL 260989, at *1 (internal quotation marks omitted). "Instead, denial of the motion means the court cannot determine whether the evidence in

3

question should be excluded outside the trial context." Id. "The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine." Id.

The district court has broad discretion to determine the admissibility of evidence, and the appellate court will not disturb this Court's judgment absent a clear abuse of discretion. United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998); see also United States v. Jernigan, 341 F.3d 1273, 1285 (11th Cir. 2003)("Inherent in this standard is the firm recognition that there are difficult evidentiary rulings that turn on matters uniquely within the purview of the district court, which has first-hand access to documentary evidence and is physically proximate to testifying witnesses and the jury.").

**III. Analysis**

Federal Rule of Civil Procedure 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. All relevant evidence is admissible unless "its probative value

is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 402, 403; United States v. Ross, 33 F.3d 1507, 1524 (11th Cir. 1994). Use of Rule 403 to exclude relevant evidence is an "extraordinary remedy" whose "major function . . . is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." United States v. Grant, 256 F.3d 1146, 1155 (11th Cir. 2001).

In its Motion, Stanley Access seeks an order excluding various evidence. (Doc. # 55). Specifically, Stanley Access wishes to bar Leibson from introducing any expert testimony from Leibson's treating physicians, the videotaped door testing by Leibson's expert, and references to the "Warren Davis Paper." (Id. at 2-3).

**A. Expert Testimony of Treating Physicians**

Stanley Access argues that any expert opinions from Leibson's treating physicians should be excluded because Leibson "did not provide an expert disclosure listing any treating physicians or a summary of facts or opinions such

5

physicians may provide as required by Federal Rule of Civil Procedure 26(a)(2)(C)." (Doc. # 55 at 4).

"A treating physician may testify as either a lay witness or an expert witness; however, in order to testify as an expert witness, the physician must provide the required disclosures under either Rule 26(a)(2)(B) or Rule 26(a)(2)(C)." Sweat v. United States, No. 8:14-cv-888-T-17JSS, 2015 WL 8270434, at *2 (M.D. Fla. Dec. 8, 2015)(citations omitted). Typically, treating physicians are only required to satisfy the lower standard of Rule 26(a)(2)(C). See Bostick v. State Farm Mut. Auto. Ins. Co., No. 8:16-cv-1400-T-33AAS, 2017 WL 2869967, at *2 (M.D. Fla. July 5, 2017)("Under the plain language of Rule 26(a)(2)(B), Bostick's treating physicians were not required to provide written reports because they were not retained or specially employed to provide expert testimony.").

Pursuant to Rule 26(a)(2)(C), a party must submit an expert disclosure for any expert witness not required to submit an expert report. That expert disclosure must state "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

According to Stanley Access, Leibson "wholly failed to provide any disclosure pursuant to Rule 26(a)(2)(C)." (Doc. # 55 at 6). "Although her treating physicians were listed in her answers to interrogatories and initial disclosures, neither of those documents provided any insight into the opinions the physicians would offer or the bases of such opinions." (Id.). In response, Leibson does not contend that she actually complied with the requirements of Rule 26(a)(2)(C). Instead, she asserts that "[t]here is no prejudice to the Defense regarding knowledge or content of [Leibson's] above listed medical witnesses" because Leibson "listed all medical witnesses . . . in [her] initial Rule 26 disclosures . . . and amended Rule 26 disclosure." (Doc. # 62 at 3-4). Leibson emphasizes that her Rule 26 disclosure provided "a summary stating each of [the treating physicians] would be testifying to 'damages and medical treatment' regarding [Leibson]." (Id. at 3).

The Court agrees with Stanley Access. Here, Leibson disclosed her treating physicians in her Rule 26(a)(1) initial disclosures as testifying on "damages and medical treatment." (Doc. # 55 at 31-32). But the mere reference to "damages and medical treatment" as the subject matter of the treating physicians' testimony does not satisfy Rule

7

26(a)(2)(C). See Bostick, 2017 WL 2869967, at *2 ("The production of the witnesses' names along with the fact that they will testify as to 'damages' is insufficient to meet even the lower standard of Rule 26(a)(2)(C)."). And Leibson provided no summaries of the facts and opinions to which the witnesses are expected to testify, as required by Rule 26(a)(2)(C).

Therefore, Leibson's treating physicians may only testify as lay witnesses about their observations made during the course of Leibson's treatment. See Id. ("Bostick was required to comply with Rule 26(a)(2)(C) for the treating physicians to testify beyond observations made during the course of their treatment. Because Bostick failed to meet the requirements of 26(a)(2)(C), her treating physicians' testimony shall be limited to facts and observations made during the course of treatment. In other words, the treating physicians will be treated as lay witnesses."). As lay witnesses, the treating physicians may not answer hypothetical questions. See United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005)("[T]he ability to answer hypothetical questions is '[t]he essential difference' between expert and lay witnesses." (citation omitted)); Chau v. NCL (Bahamas) Ltd., No. 16-21115-CIV, 2017 WL 3623562, at

8

*13 (S.D. Fla. May 3, 2017)("The case law makes clear that such [hypothetical] inquiries and responses are reserved for witnesses testifying in an expert capacity, unlike the physicians in this case.").

Next, Stanley Access argues that Leibson's treating physicians should not be allowed to testify on five subjects, because those subjects are beyond the scope of their treatment of Leibson and are therefore expert opinions. (Doc. # 55 at 6); see Chau, 2017 WL 3623562, at *7 ("A treating physician providing lay testimony can testify narrowly, limited to personal knowledge resulting from providing medical care, involving consultation, examination, or treatment of a patient plaintiff."). Specifically, Stanley Access insists the treating physicians should be precluded from testifying that: "surgery related to a bowel obstruction was caused by the subject fall"; "[Leibson] suffers memory impairment as a result of falling, the subsequent surgery, anesthesia, or treatment related thereto"; "[Leibson] is unable to walk due to the subject fall"; "[Leibson's] continued treatment in an assisted living facility is caused by the subject fall"; and about "the alleged cause of [Leibson's] fall." (Id. at 6-8).

Leibson concedes that her treating physicians should not testify about "the fact that [Leibson] suffers memory

9

impairment as a result of falling, the subsequent surgery, anesthesia, or treatment related thereto" or about "the cause of the injury." (Doc. # 62 at 6-7). Therefore, the Court grants Stanley Access's Motion as to these topics.

But Leibson insists her treating physicians should be allowed to testify that the "surgery related to a bowel obstruction was caused by the subject fall"; "that [Leibson] is unable to walk due to the subject fall"; and "that [Leibson's] continued treatment in an assisted living facility is the result of the subject fall." (Id. at 7). According to her, "all these issues are related to their treatment and care of [Leibson] after sustaining the injury and are not 'expert opinions.'" (Id.).

While the Court agrees with Stanley Access that the treating physicians may not express opinions that were not developed as part of Leibson's treatment, the Court is unable to determine outside the trial context whether the anticipated opinions about Leibson's bowel obstruction, her ability to walk, and her residence in an assisted living facility were developed as part of her treatment. See Rementer v. United States, No. 8:14-cv-642-T-17MAP, 2015 WL 5934522, at *5 (M.D. Fla. Oct. 9, 2015)("Because a treating physician considers not only the plaintiff's diagnosis and

10

prognosis, opinions as to the cause of injuries do not require a written report if based on the examination and treatment of the patient."). Therefore, Stanley Access's Motion is denied as to these topics.

**B.  Videotaped Door Testing**

Next, Stanley Access argues that the videotaped testing of the door by Leibson's engineering expert, Dr. Kadiyala, should be excluded in its entirety. (Doc. # 55 at 11-15). According to Stanley Access, Leibson has failed to show that Dr. Kadiyala's testing was "substantially similar to the alleged incident." (Id. at 12). It notes that whether Leibson was struck by the door at all is a contested issue in this case and that Leibson testified in her deposition that she was not sure whether the door hit her. (Id. at 13). Furthermore, Dr. Kadiyala — who had not read Leibson's deposition or watched security video of the accident at that time — placed his foot in the way of the door while leaning his body backwards to avoid detection by the sensors during the testing. (Id. at 11-13). So, Stanley Access reasons, this testing was not "substantially similar" to the accident because "there is no evidence that [Leibson] angled her body back in a way that would prevent it from engaging certain

11

sensors" or that Leibson's foot rather than her cane was struck by the door. (Id. at 14).

"As a general rule, the district court has wide discretion to admit evidence of experiments conducted under substantially similar conditions." Nelson v. Freightliner, LLC, 154 F. App'x 98, 113 (11th Cir. 2005)(citation omitted). "The courts have explained that for a test to be admissible in evidence, 'it is not required that all conditions shall be precisely reproduced, but they must be so nearly the same in substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed.'" Threatte v. Toyota Motor Corp., No. CV600-085, 2006 WL 8436165, at *16 (S.D. Ga. May 2, 2006)(quoting Barnes v. Gen. Motors Corp., 547 F.2d 275, 277 (5th Cir. 1977)).

While Stanley Access contests that the door actually struck Leibson, it is Leibson's theory of the case that she was struck by the same door with which Dr. Kadiyala conducted his testing. The Court is not convinced at this juncture that the testing is not substantially similar to the conditions of Leibson's accident.

Even if the testing was substantially similar to Leibson's accident, Stanley Access insists such testing is irrelevant to the remaining claim in the case. (Doc. # 55 at

14). It notes that "the only issue remaining is whether [Stanley Access] provided negligent instructions regarding installation and maintenance," but "[t]he experiments performed by Dr. Kadiyala relate to the operation of the door, not the instructions regarding installation and maintenance." (Id.).

Leibson argues the videotaped testing is still relevant because "[t]esting that recreates the malfunction makes it more probable than without it that the door was negligently installed," which potentially supports that negligent instructions on installation were the cause of the poor installation. (Doc. # 62 at 9). The Court agrees with Leibson that the videotaped testing satisfies the liberal Rule 401 test for relevance. And the Court does not agree that the videos are unfairly prejudicial such that they should be excluded under Rule 403 at this juncture. Therefore, Stanley Access's Motion is denied as to this request.

    C.    **References to the "Warren Davis Paper"**

Finally, Stanley Access seeks to exclude "a 2004 paper written by a gentleman named Warren Davis and/or the portions of that paper cited in the report by [The TJX Companies'] expert, Dr. Smith." (Doc. # 55 at 15). It argues the paper and any reference to it in Dr. Smith's report "should be

13

excluded because [] they are inadmissible hearsay, they were not relied on by any expert in this case, and they are not relevant to the sole claim remaining in the case — whether [Stanley Access] negligently provided instructions regarding the installation and maintenance of the subject door." (Id.).

Leibson's response to the Motion fails to discuss the "Warren Davis Paper" and its admissibility at all. (Doc. # 62). Therefore, Leibson does not oppose Stanley Access's request. Additionally, the Court agrees that the "Warren Davis Paper," and reference to it in Dr. Smith's report, is inadmissible as it will not be relied on by any expert at trial and is irrelevant to whether the instructions on maintenance and installation were negligent. Stanley Access's Motion is granted as to this request.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Stanley Access Technologies' Amended Omnibus Motion in Limine (Doc. # 55) is **GRANTED in part and DENIED in part** as set forth herein.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 14th day of August, 2018.

/s/ Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE